UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHONDOLYN BLEVINS,<br><br>                    Petitioner,<br><br>       v.<br><br>WARDEN JACQUEZ,<br><br>                    Respondent. | Case No. C20-485-JLR-MLP<br><br>REPORT AND RECOMMENDATION |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Shondolyn Blevins is a federal prisoner who is currently confined at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac"). She has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging a prison disciplinary proceeding that took place while she was confined at the Federal Correctional Complex in Hazelton, West Virginia ("FCC Hazelton") in 2018. (Pet. (Dkt. # 7).) Respondent filed a return to the petition together with the declaration of Kenneth Craddock, the Disciplinary Hearing Officer who conducted the disciplinary hearing at issue here.[1] (*See* Ret. (Dkt. # 18); Craddock Decl. (Dkt. #

---

[1] There were a number of exhibits attached to the declaration, some of which were incomplete. Respondent subsequently supplemented the record with the missing exhibits. (*See* Dkt. # 23.)

REPORT AND RECOMMENDATION
PAGE - 1

18-1).) Petitioner filed a response to Respondent's return to complete the briefing in this matter. (Resp. (Dkt. # 21).) The Court, having reviewed the petition, the briefing of the parties, and the balance of the record, concludes that Petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

## II.    BACKGROUND

On January 7, 2013, Petitioner was sentenced in the United States District Court for the Western District of Louisiana to a 152-month term of confinement following her conviction on drug and firearms charges. (Craddock Decl., ¶ 4 and Ex. A.) The events giving rise to this federal habeas action occurred while Petitioner was serving her sentence at FCC Hazelton where she was housed from October 26, 2017 to June 21, 2018. (*Id*., ¶ 5.)

On April 15, 2018, Correctional Officer J. Thayer conducted a random search of Petitioner's cell at FCC Hazelton during which he found a combination lock tied to a belt underneath her mattress. (*Id*., ¶ 6A and Ex. C.[2]) Petitioner was the sole occupant of that cell and other items found in the cell during the search, including mail and personal items, belonged only to Petitioner. (*Id*.) Following the search, Officer Thayer prepared an incident report charging Petitioner with a violation of Prohibited Act Code 104 which prohibits the possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon. (*Id*., ¶ 6B and Ex. C.)

The incident report was delivered to Petitioner on April 23, 2018, and Petitioner was at that time advised of her rights during the disciplinary process which she acknowledged she understood. (*See id*., ¶ 6C and Ex. C.) The incident report was thereafter referred to the Unit

---

[2] Exhibit C was one of the incomplete exhibits referenced above. The corrected version of the exhibit is attached to Dkt. # 23.

REPORT AND RECOMMENDATION
PAGE - 2

Discipline Committee ("UDC") which, in turn, referred the matter to the Disciplinary Hearing Officer ("DHO"). (*See id*.) On April 25, 2018, Petitioner was given notice that a disciplinary hearing would be held before the DHO and she was advised of her rights at the hearing. (*Id*., ¶ 7 and Ex. D at 1-2.) The notice reflects Petitioner's request for a staff representative, Mr. Shiflett, and indicates her desire to call a witness, fellow inmate Kayla Bray.[3] (*Id*., Ex. D at 2.)

DHO Craddock conducted a disciplinary hearing on May 14, 2018. (Craddock Decl., ¶ 8A and Ex. E.) DHO Craddock's report of the proceedings reflects Petitioner's acknowledgment that she received a copy of the incident report and that she understood her rights. (*Id*., Ex. E at 1.) After being read the charge and asked if it were true, Petitioner stated, "Not guilty. Don't know where that came from. It wasn't being used as a weapon. I motion for it to be dismissed." (*Id*., ¶ 8B and Ex. E at 1.) DHO Craddock acknowledged in his report Petitioner's request to call inmate Bray but indicated he had opted not to call the witness because inmate Bray refused to answer any questions and expressly refused to be a witness for Petitioner. (*Id*., ¶ 8C and Ex. E at 2-3.) DHO Craddock also noted that he had denied a request by Petitioner to have her staff representative watch 11-14 hours of video footage because he considered the request unreasonable. (*See id*., Ex. E at 3.) Petitioner ultimately did not present any evidence at the hearing. (*Id*., ¶ 8D and Ex. E at 2.)

DHO Craddock considered as evidence at Petitioner's hearing the incident report and investigation, a memorandum by SOS N. Vail dated May 14, 2018, a handwritten letter from

---

[3] DHO Craddock incorrectly states in his declaration that Petitioner declined to call any witnesses at the hearing. (*See* Craddock Decl., ¶ 7.) DHO Craddock's statement reflects an apparent misreading of the notice of disciplinary hearing. The notice shows that Petitioner requested inmate Bray be called as a witness and a notation on the form, in handwriting different from that appearing on the rest of the form, indicates that inmate Bray refused to testify or to act as a witness for Petitioner. (*See id*., Ex. D at 2.)

REPORT AND RECOMMENDATION
PAGE - 3

inmate Bray, a digital photograph, and the chain of custody log. (*Id.*) Based on this evidence, most of which is not a part of the record before this Court, DHO Craddock determined that Petitioner had committed the prohibited act of possession of a dangerous weapon. (*Id.*, ¶ 9, Ex. E at 2-3.) Petitioner was sanctioned with disallowance of 40 days of good conduct time, 30 days of disciplinary segregation, and 180 days loss of commissary. (*Id.*, ¶ 10 and Ex. E at 3-4.)

DHO Craddock completed his report on May 17, 2018, and the report was delivered to Petitioner the following day. (*Id.*, ¶¶ 10, 11 and Ex. E at 4.) The report advised Petitioner of the DHO's findings, the evidence relied upon, and the sanctions imposed. (*Id.*, ¶ 11 and Ex. E at 4.) Petitioner was also advised of her right to appeal the disciplinary action under the administrative remedy procedure. (*Id.*) Petitioner appealed the disciplinary action to both the Regional Director and to the Office of General Counsel, and both appeals were denied. (*Id.*, ¶ 13 and Ex. G at 52-53; Dkt. # 23, Ex. H.)

### III.   DISCUSSION

Petitioner asserts that her rights were violated during the May 2018 disciplinary proceeding at FCC Hazelton. (*See* Pet. at 5-6.) Specifically, Petitioner claims that the object found in her cell did not meet the definition of a weapon under the Federal Bureau of Prisons ("BOP") disciplinary rule she was found to have violated, and that the DHO abused his authority when he inferred that Petitioner intended to use the object as a weapon. (*See id*. at 3, 5.) Petitioner also claims her due process rights were violated when the DHO denied her request to obtain and present video surveillance evidence at her disciplinary hearing, and when her staff representative refused to assist her in reviewing the surveillance video and failed to verify additional information necessary to her defense. (*Id*. at 3-6.) Finally, Petitioner claims that FCC

REPORT AND RECOMMENDATION
PAGE - 4

Hazelton employees fabricated evidence against her in retaliation for a sexual harassment complaint she wrote against one of the employees, and that a false statement entered into her records by an officer at Federal Medical Center ("FMC") Carswell was used to justify denying her appeal of the disciplinary decision at issue here. (*Id*. at 4.)

### A.    Applicable Standards

When a prisoner is deprived of good time credit as a sanction for misconduct, a protected liberty interest is implicated and the prisoner is entitled to the protections of the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). The Supreme Court, in *Wolff*, held that in the context of prison disciplinary proceedings, due process requires an inmate be afforded: (1) advance written notice of the claimed violation – at least twenty-four hours prior to the disciplinary hearing; (2) an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence in her defense when consistent with institutional safety and correctional goals; (4) assistance from others for an illiterate inmate or in a complex case; and (5) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-71.

The Supreme Court has also held that, in order to comport with due process, a decision in a prison disciplinary proceeding to revoke good time credits must by supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The Supreme Court explained in *Hill* that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56. The Court further

REPORT AND RECOMMENDATION
PAGE - 5

explained that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

### B.    Analysis

Respondent suggests in his return that Petitioner has not claimed she was denied any of the minimal procedural protections due process requires for a prison disciplinary proceeding. (Ret. at 5.) The Court disagrees with Respondent's assessment of Petitioner's claims. Petitioner specifically asserts in her petition that the prison disciplinary proceeding at issue here failed to satisfy the minimum procedural requirements, as established in *Wolff*, in two ways: (1) the DHO denied Petitioner's request for video surveillance evidence; and (2) Petitioner was denied adequate staff assistance. (*See* Pet. at 3, 6; *see also* Resp. at 2-3.)

According to the DHO's report of the disciplinary proceeding, Petitioner asked that her staff representative watch "11-14 hours of video footage" from the day of the search to see which inmates and staff members had gone into her cell. (Craddock Decl., Ex. E at 1, 3.) The DHO denied the request because he considered it unreasonable. (*Id*. at 3.) Petitioner apparently deemed the video surveillance footage pertinent to her defense that the weapon was not hers and that it was planted in her cell by others. (*See id*., Ex. E at 3.)

Petitioner asserts in her petition that FCC Hazelton staff members fabricated evidence against her, thereby prompting the disciplinary action, in retaliation for a sexual harassment complaint Petitioner drafted against one of the staff members. (Pet. at 4.) According to Petitioner, that complaint was found in her cell during a search conducted the day before the weapon was found. (*Id*.) This is apparently not a theory Petitioner presented at her disciplinary

REPORT AND RECOMMENDATION
PAGE - 6

hearing. So far as this Court can discern from the record before it, Petitioner made an unsupported accusation at her hearing that staff members conspired to plant the weapon in her cell. The mere suggestion that a review of an entire day's worth of video footage *might* have revealed evidence to support an otherwise conclusory allegation does not render the denial of the request by the DHO unreasonable. The Court notes, in particular, that even video footage showing officers entering and/or leaving Petitioner's cell during the course of the day in question would not necessarily constitute exculpatory evidence for purposes of the disciplinary charge.

As to Petitioner's complaints regarding the adequacy of the assistance provided by her staff representative, the Court first notes that it appears Petitioner was provided a staff representative as part of the BOP's standard disciplinary procedures. (*See* Craddock Decl., Ex. D at 2.) In *Wolff*, the Supreme Court held that where an illiterate inmate is involved in the disciplinary proceeding, or where the issue is so complex that it is unlikely an inmate will be able to "collect and present the evidence necessary for an adequate comprehension of the case," the inmate is entitled to seek assistance from others. *Wolff*, 418 U.S. at 570. Petitioner is clearly not illiterate and the disciplinary proceeding was not so complex as to require the assistance of a representative under the due process standard announced in *Wolff*. Because Petitioner was not constitutionally entitled to a staff representative, any alleged inadequacies in the assistance provided do not implicate constitutional concerns.

Moreover, the alleged inadequacies do not suggest any unfairness in Petitioner's disciplinary proceeding. Petitioner faults her staff representative for refusing to help review the surveillance video, but it appears the decision of whether the staff representative would be permitted to fulfill this request was within the purview of the DHO who denied it. (*See* Craddock

REPORT AND RECOMMENDATION
PAGE - 7

Decl., Ex. E at 3.) Petitioner's other complaints about her staff representative are that he failed to verify her cell had been searched as recently as the day prior to the day the weapon was discovered, that he refused to verify Officer Thayer had re-written the incident report three times, and that he failed to verify an actual "instrument" had been found. (Pet. at 4.) It does not appear Petitioner raised any of these issues at her disciplinary hearing. (*See* Craddock Decl., Ex. E at 1.) Petitioner's complaints about her staff representative should have been made to the DHO in the first instance so that her concerns could have been addressed in the context of the hearing. The Court observes that, even though Petitioner was presumably aware of the alleged deficiencies in her representative's assistance at the time of the hearing, she nonetheless advised the DHO she was ready to proceed. (*Id*., Ex. E at 1-2.)

With respect to the two procedural defects specifically identified by Petitioner in her federal habeas petition, Petitioner fails to demonstrate that the alleged defects at her disciplinary hearing violated her procedural due process rights. As to the other requirements of due process identified in *Wolff*, including the right to advance written notice of the charge and to a written statement by the factfinder, Petitioner does not challenge these aspects of the proceeding and the record appears to confirm that these requirements were satisfied. Respondent, in his return, focuses a significant portion of his argument on the impartiality of the decision maker. (Ret. at 6-7.) However, the Court does not construe Petitioner's petition as challenging the impartiality of the DHO and it does not appear from the record that there would have been any basis to do so. Viewing the record as a whole, this Court concludes that the BOP's disciplinary proceedings against Petitioner did, in fact, comport with the minimum due process requirements outlined in *Wolff*.

REPORT AND RECOMMENDATION
PAGE - 8

With respect to the outcome of the disciplinary proceeding, Petitioner argues that there is no evidence in the record to support the conclusion reached by the DHO. (Resp. at 2.) At her hearing, Petitioner denied the charge that she was in possession of a weapon, stating to the DHO that she did not know where the instrument found in her cell had come from and that it was not being used as a weapon. (Craddock Decl., Ex. E at 3.) The DHO considered Petitioner's denial but gave greater weight to Officer Thayer's report that he found a combination lock tied to a belt underneath Petitioner's mattress during a random search of her cell, and that Petitioner was the only inmate assigned to the cell in question. (*Id*.) The DHO made clear that Petitioner was responsible for ensuring that areas assigned to her remained contraband free. (*Id*.) The DHO also acknowledged Petitioner's claim that corrections officers had conspired to plant the object in her cell but noted she had presented no evidence to support the claim and that claims regarding staff misconduct were outside the scope of his authority.[4] (*Id*.) It was fully within the purview of the DHO to make credibility determinations and to resolve conflicts in favor of the reporting officer, particularly in the absence of any evidence directly refuting the officer's account.

To the extent Petitioner challenges the outcome of the disciplinary hearing based on her belief that the DHO erred in concluding that the object found in her cell constituted a weapon, Petitioner's challenge lacks merit. Petitioner told the DHO at the hearing that she did not "see it written anywhere" that a lock tied to the end of a belt is considered a weapon. (*Id*.) The DHO responded that attaching a lock to a belt creates a "bolo" type weapon which is a typical weapon

---

[4] The DHO, upon informing Petitioner that he did not have the authority to investigate staff misconduct claims, did note that he was obligated to report the claim. (Craddock Decl., Ex. E at 3.) The DHO's report indicates that he notified the Special Investigative Agent ("SIA") at FCC Hazelton of Petitioner's claim regarding staff misconduct and that he also forwarded to the SIA Petitioner's request that all video footage from the day of the incident be preserved. (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 9

fashioned by inmates in a correctional setting. (*Id.*) The DHO was entitled to rely on his institutional knowledge and experience to make this determination. Petitioner's suggestion that the DHO had to infer that she intended to use the object as a weapon in order to find her guilty of the charge is incorrect. The rule Petitioner was charged with violating prohibits inmates from possessing a weapon. (*See id.*, ¶ 6B and Ex. C.) It was sufficient for the DHO to conclude that the lock tied to the belt constituted a weapon to find Petitioner guilty of the rule violation.

The "some evidence" standard established by the Supreme Court in *Hill* is not a particularly onerous one and this Court must conclude, based on the record before it, that the standard has been met and that Petitioner's disciplinary hearing comported with due process.

Finally, the Court briefly addresses Petitioner's suggestion that there was some irregularity in her appeal. As noted above, Petitioner asserts in her petition that there was a false statement entered into her records by an officer at FMC Carswell that was used to justify denying her appeal of the disciplinary decision at issue here. The record reflects that Petitioner was confined at FMC Carswell from late June 2018 to early June 2019, and the statement at issue appears to be one made by a FMC Carswell officer to the effect that he overheard Petitioner talking about using a "lock in a sock" for several altercations she had been involved in. (*See* Craddock Decl., Ex. B at 1; Resp., Ex. A.) However, nothing in the appeal records related to the disciplinary action at issue here makes any reference to the statement of the FMC Carswell employee. (*See* Craddock Decl., Ex. H.) Petitioner's assertion that the statement was used to deny her appeal is nothing more than conjecture and does nothing to call into question the constitutionality of her disciplinary proceedings.

REPORT AND RECOMMENDATION
PAGE - 10

## IV.   CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

## V.   OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 14, 2021**.

DATED this 16th day of April, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge